IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ATHENA M. NUNEZ, | No. 2:16-CV-1953-CMK |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security. Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 16) and defendant's cross-motion for summary judgment (Doc. 19).

///

///

///

# I. PROCEDURAL HISTORY

Plaintiff applied for social security benefits on October 5, 2010. In the application, plaintiff claims that disability began on April 30, 2010. Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on July 9, 2012, before Administrative Law Judge ("ALJ") Mark C. Ramsey. In an August 13, 2012, decision, the ALJ concluded that plaintiff is not disabled. The Appeals Council declined review on September 12, 2013, and plaintiff sought judicial review. See Nunez v. Colvin, E. Dist. Cal. No. 2:13-CV-2328-DAD.

In a March 16, 2015, opinion, the District Court reversed and remanded for further proceedings. The court concluded that the ALJ failed to properly evaluate the January 7, 2011, opinion of Dr. Sid Cormier. As to the ALJ's discussion of Dr. Cormier, the court stated:

> Based on his examination, Dr. Cormier opined, in part, that plaintiff's impairments would moderately impair her ability to maintain regular attendance and perform even simple work activities on a consistent basis. (Tr. at 223). Moreover, Dr. Cormier found that plaintiff's ability to complete a normal workday or workweek "without interruptions resulting from the ramifications of her mild mental retardation and apparently well-managed bipolar disorder and panic attacks," was "moderately to seriously impaired even for a simplistic job." (Id.). Dr. Cormier also opined that plaintiff was moderately impaired with respect to her ability to: accept and remember instructions; to interact with coworkers and the general public; to concentrate; to maintain pace; and to adjust to routine changes in a work situation. (Id.). With respect to her ability to deal with typical work stresses, Dr. Cormier found that plaintiff was moderately to severely impaired. (Id.).
> Nonetheless, the ALJ failed to assign any specific weight to Dr Cormier's opinion. Instead, the ALJ found that the limitations noted above were "not consistent with the evidence" and, therefore, Dr. Cormier's opinion with respect to those limitations was "not credited." (Tr. at 19). In this regard, the ALJ found that Dr. Cormier's opinion was "inconsistent with the prior evaluation by Dr. Anita Kemp in April 2008."

In footnote 3, the court made the following observation:

> It does not appear that Dr. Kemp's opinion is part of the administrative record before this court in connection with this action. An April 29, 2010, denial of plaintiff's prior claim is part of the administrative record and in that decision Dr. Kemp's opinion is discussed. Moreover, the parties here do cite to an April 29, 2010, ALJ decision when discussing

Dr. Kemp's opinion. (Tr. at 60). However, it is unclear whether in drafting the August 13, 2012, opinion at issue in this action the ALJ had a copy of Dr. Kemp's actual medical opinion or merely had the prior April 29, 2010, ALJ decision in which Dr. Kemp's opinion was discussed. In either event, this court has not had the opportunity to review Dr. Kemp's opinion.

Regarding the ALJ's analysis of Dr. Cormier's opinion, the court continued:

> . . .The ALJ proceeded to discuss Dr. Kemp's opinion, which included findings that plaintiff's full scale IQ was 72 and that plaintiff could maintain regular attendance and perform simple, repetitive tasks, before ultimately affording Dr. Kemp's opinion "great weight." (footnote omitted). (Id.).
> However, Dr. Cormier's examination of plaintiff, and the medical opinion he rendered based upon that examination, was far more recent than that of Dr. Kemp's. Dr. Cormier examined plaintiff in January of 2011, nearly three years after Dr. Kemp's April 2008 opinion was issued. Indeed, Dr. Kemp's opinion was rendered over two year[s] prior to the application for disability at issue in this action, and two years prior to the time plaintiff alleges that she became disabled.
> Moreover, the ALJ notes no significant conflict between examining psychologist Dr. Cormier's opinion and plaintiff's treatment records. Indeed, plaintiff's treatment records reveal that during the time period at issue in this action she frequently received treatment for bipolar, panic and schizoaffective disorders, experienced manic and depressed symptoms, including panic attacks, racing thoughts, difficulty concentrating and difficulty leaving home, and that her GAF ranged from 50 to 55. (footnote omitted). (Id.).
> Under these circumstances, the court cannot find that the ALJ offered specific and legitimate reasons supported by substantial evidence in the record to support the rejection of examining psychologist Dr. Cormier's opinion. . . .

The court also concluded that the ALJ had improperly applied the doctrine of res judicata in the August 13, 2012, decision. Specifically, the court held:

> In light of the evidence provided by examining psychologist Dr. Cormier's opinion, plaintiff did present proof of changed circumstances sufficient to overcome the presumption, based on the earlier decision, that she was not disabled. See Schnieder v. Commissioner of the Social Sec. Admin., 223 F.3d 968, 974 (9th Cir. 2000) (a psychological report noting changed test scores and diagnosis was sufficient proof of changed circumstances).

///

///

3

On remand, the matter was assigned to the same ALJ, and a second hearing was held on April 27, 2016. In a June 16, 2016, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): bipolar disorder, anxiety, attention deficit hyperactivity disorder, panic disorder with agoraphobia, borderline intellectual functioning, mood disorder, and schizoaffective disorder;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: she can perform a full range of work at all exertional levels with the following non-exertional limitations: the claimant can perform simple unskilled work requiring no interactions with the public; she can occasionally interact with fellow employees; she can perform work that requires little or no change in routine work settings; and

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, plaintiff can perform her past relevant work as an automatic [film] developer.

The ALJ's decision became final with the expiration of the time to seek review by the Appeals Council on August 15, 2016, and this second action for judicial review followed.

## II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's

decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

### III. DISCUSSION

In her motion for summary judgment, plaintiff argues: (1) the ALJ erred in relying on a medical report not in the record at the time of the hearing; (2) the ALJ violated the doctrine of Law of the Case doctrine and the Rule of Mandate; and (3) the ALJ failed to state sufficient reasons for rejecting the opinions of Drs. Cormier, White, and Addonizio.

**A. Dr. Kemp's Report**

As the court observed in the earlier action for judicial review, Dr. Kemp's April 2008 report was not part of the prior administrative record and was not available for the court's review. Dr. Kemp's report is, however, part of the current administrative record, see CAR at Exhibit B21F.[1] Plaintiff argues: "Because the ALJ did not refer to Dr. Kemp's report during the administrative hearing, did not facially admit the report of Dr. Kemp into the record during the administrative hearing, the court cannot confidently conclude that Nunez had the opportunity to compare the opinions and report of Dr. Kemp to those of Dr. Cormier and Dr. White, consultative examiners retained by the State agency, or to those of Dr. Addonizio, the treating

---

[1] Citations are to the Certified Administrative Record lodged on March 16, 2017 (Doc. 14).

physician."

Plaintiff does not explain what error occurred other than to suggest that somehow she did not have sufficient notice that Dr. Kemp's report was relevant. Plaintiff does not explain what she means by the ALJ's claimed failure to "facially admit" Dr. Kemp's report during the hearing, nor does she cite any authority which would require the report to be admitted during the hearing. Similarly, plaintiff does not cite any authority supporting her apparent argument that this court must be able to conclude that she had the opportunity to compare Dr. Kemp's report with other evidence of record.

In any event, Dr. Kemp's report was considered by the ALJ in the context of the decision currently under review and it is part of the current record. Moreover, there is no indication that plaintiff was unaware of the relevance of Dr. Kemp's report as it was discussed in the prior decision, and it is clear that plaintiff has had every opportunity to review Dr. Kemp's report.

**B.** **<u>Law of the Case and the Rule of Mandate</u>**

The Law of the Case doctrine prohibits a court from considering an issue that has already been decided by that same court or a higher court in the same case. See <u>Stacy v. Colvin</u>, 825 F.3d 563 (9th Cir. 2016). The Rule of Mandate requires that "any district court that has received the mandate of an appellate court cannot vary or examine that mandate for any purpose other than executing it." <u>Hall v. City of Los Angeles</u>, 697 F.3d 1059 (9th Cir. 2012). Both apply in social security cases. See <u>Stacy</u>, 825 F.3d at 567. Plaintiff argues:

> . . .The ALJ did not invoke the changed circumstances established by Dr. Cormier' is [sic] opinion, did not assign appropriate way [sic] to Dr. Cormier [sic] process opinion in light of the findings of the District Court, and proceeded under the erroneous assumption that the ALJ could reject the opinion of Dr. Cormier by again referring back to the findings of Dr. Kemp. . . .

/ / /

/ / /

To the extent plaintiff argues that the ALJ was required by the prior District Court decision to accept all of Dr. Cormier's opinions, plaintiff misreads the prior decision. That decision concluded that Dr. Cormier's opinion constituted evidence of changed circumstances and, therefore, that the ALJ had erred in applying administrative res judicata. On remand, the ALJ proceeded consistent with this ruling, did not apply administrative res judicata, and analyzed the case in light of changed circumstances. Nothing in the prior District Court decision required the ALJ on remand to credit all of Dr. Cormier's opinions. To the contrary, the District Court in the prior case rejected plaintiff's argument that payment of benefits should be ordered and instead remanded the matter for further consideration by the agency in light of the changed circumstances revealed by Dr. Cormier's report. That is exactly what the ALJ did on remand.

### C. Evaluation of the Medical Opinions

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical

findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

In this case, the ALJ relied on an April 29, 2008, report by examining consultative psychiatrist Anita Kemp, Ph.D. See CAR at Exhibit B21F. As to this report, the ALJ stated:

> On mental status exam, Dr. Kemp noted she had good eye contact and social skills. Her speech was clear, logical, and of normal pace. She exhibited no movement problems and was cooperative. She exhibited no abnormalities with thought process or thought content. She did not appear to respond to hallucinations or perceptual disturbances and she did not report any. She reported her mood was "up and down, angry, irritated." She had nightmares, increased weight, phobia of heights, and worried something bad would happen to her children. Dr. Kemp noted "her abuse memories triggered, panic attacks in crowds, hypervigilance, wary of people, avoids stores when crowded." She exhibited a full range of affect. She was oriented to person, place, and time. She did not report problems with short or long-term memory. Her insight was good as she was aware of difficulties concentrating. Her judgement was good as she was seeking help for emotional difficulties.
>
> * * *
>
> Dr. Kemp administered a battery of psychometric tests including the Test of Memory Malingering (TOMM), the Bender Gestalt II, the Wechsler Adult Intelligence Scale III, the Wechsler Memory Scale III, and the Trails A and B. On the TOMM, her scores indicated she put forth her best effort.

On the intelligence test, she obtained a full scale IQ score of 72, which Dr. Kemp opined indicated the claimant's general cognitive ability is in the borderline range. Dr. Kemp opined the score indicated the claimant might experience difficulty in keeping up with her peers in a wide variety of situations that require age appropriate thinking and reasoning abilities.

Her verbal IQ score was 74 and also in the borderline range and Dr. Kemp opined this score and her verbal comprehension index show a relative weakness in comprehending verbal information and may impede her ability to learn new material. Her performance IQ of 74 was also in the borderline range. On the memory test (WMS III), she obtained a score of 66 on the working memory index, which is in the extremely low range. However, she obtained borderline range scores on the immediate and general memory index specifically, a 71 on the immediate memory index, and a 75 on the general memory index. On Trail A, she performed in the normal range and on Trail B, she performed in the mild to moderate impairment range.

Dr. Kemp diagnosed the claimant with generalized anxiety disorder, amphetamine disorder in full remission, and borderline intellectual functioning. She assessed her GAF as 59 indicating she exhibited moderate psychological symptoms. Functionally, Dr. Kemp opined the claimant was capable of performing simple and repetitive tasks. Her ability to do the same with complex tasks is 1 and 3/4 standard deviations below the mean based on her FSIQ. Her ability to maintain regular attendance in the workplace in [sic] mildly impaired as is her ability to do work activities in a safe manner due to anxiety. Her ability to maintain social functioning is moderately impaired due to anxiety and her ability to interact appropriately with supervisors, coworkers, and the public is mildly impaired. She is moderately impaired in her ability to deal with changes in a routine work setting due to anxiety and cognitive level. Dr. Kemp found her competent to handle funds in her best interests. Dr. Kemp also opined her prognosis is good for remission of symptoms of anxiety disorder and opined the disorder may be causing her concentration problems and could improve (B21F).

    \* \* \*

. . .In considering Dr. Kemp's consultative examination, the undersigned gives precedential weight to the previous denial of the prior claim stemming from this evidence. However, the test results were considered by the Disability Determination Service reviewing medical consultants who did consider this evidence and noted inconsistencies between test scores in arriving at their opinions the scores were inconsistent with mental retardation as was evidence of her activities of daily living and presentation. As discussed, updated treating records show her mental status exam are relatively stable with only minor increases in symptoms when she discontinues medication. The claimant admits to ability as discussed to perform basic activities of daily living which supports she has functionally greater than that of someone with mild mental retardation. Dr. Kemp opined no significant limitations from a mental standpoint,

9

| | |
|---|---|
| 1 | which would preclude work, and evidence at this hearing level continues to be consistent with this opinion. Accordingly, the undersigned finds the opinion continues to be consistent with the substantial evidence and assigns it great weight. |

Though plaintiff states that the ALJ erred by rejecting more recent opinions in favor or Dr. Kemp's "stale findings," plaintiff assumes for the sake of argument that the ALJ did not err in this regard and focuses her arguments on whether the ALJ appropriately evaluated the more recent opinions. Plaintiff does not otherwise challenge the ALJ's reliance on Dr. Kemp's opinions. In any event, the ALJ did not rely exclusively on the opinions of Dr. Kemp.

The ALJ also relied on the opinions of consultative reviewing psychologists Cory A. Brown, Psy.D., and Uwe Jacobs, Ph.D. See CAR at Exhibits B4F, B5F, and B9F. Dr. Brown provided his opinion on March 10, 2011, and Dr. Jacobs provided his opinion on July 1, 2011. As to these doctors' opinions, the ALJ stated:

> . . .Dr. Brown noted that Dr. Cormier's testing "shows the same result as the prior testing [by Dr. Kemp]. . . . Dr. Brown opined Dr. Cormier's diagnosis of mild mental retardation was not fully supported by the evidence as the claimant's presentation and Wechsler Memory Scale scores indicated she did not have a mild mental retardation impairment. Dr. Brown found the prior ALJ decision should be adopted and opined consistent with that decision that the claimant could perform simple tasks in a reduced social setting. . . .

Dr. Jacobs concurred with Dr. Brown. In accepting these doctor's opinions, the ALJ stated:

> . . .The undersigned finds that Drs. Jacobs and Brown's opinions are supported by substantial evidence including the increased WMS III scores in Dr. Cormier's testing and the numerous mental status exams by treating sources showing no significant abnormalities [and] only some findings associated with noncompliance with treatment recommendations. Of note, in April 2012 when the claimant saw Dr. Addonizio for the first time, she said she had not taken any medications for a year, which means she was not taking medications when she tested with Dr. Cormier. . . .

The ALJ also noted that plaintiff is capable of performing activities of daily living which include caring for three children. As with Dr. Kemp, plaintiff does not challenge the ALJ's reliance on the opinions of Drs. Brown and Jacobs.

10

### 1. Dr. Cormier

Plaintiff was examined by consultative psychologist Sid Cormier, Ph.D., on January 7, 2011. As to Dr. Cormier, the ALJ stated:

> On mental status exam, Dr. Cormier found the claimant alert and oriented to person, place, time, and situation. Her sensorium appeared clear. She denied any history of experience of hallucinations or delusions, nor were any in evidence throughout the evaluation. Dr. Cormier found her thought processes proceeded in a somewhat slow and lethargic fashion, which he opined was consistent with "probable mild psychomotor retardation." Her mood appeared to be basically unremarkable with a slightly shallow affective quality. Her concentration capacity appeared episodically impaired and although she was able to successfully recall six digits forward and four digits backward, she was unable to count by serial 3's from 1 to 40. Her abstract thinking ability appeared "very significantly" impaired and she has "extremely poor grasp of concepts." For instance, although she did know that a piano and a drum both made music, she did not know that a boat and a car were both forms of transportation. Dr. Cormier stated, "Her foresight appeared perhaps below average and she does not have a very good grasp of anticipating the consequences of her own or other people's behaviors." For instance, although she did realize that a doctor's prescription was necessary to buy certain types of drugs in order to prevent them from being abused, she could not articulate how she might find her way out of the forest if lost during the daytime. Her vocabulary was probably borderline, and although she was able to successfully define "consume" and "terminate," she could not define "ponder" or "reluctant." Dr. Cormier opined, "This woman's general vocabulary, word usage, reported history, and ability to conceptualize suggests a woman of mildly retarded intellectual functioning."

The ALJ next discussed the various tests Dr. Cormier administered and the results of that testing. In particular, the ALJ noted that plaintiff obtained a full scale IQ score of 63, a verbal comprehension index of 68, a working memory index of 77, and a processing index of 65. Dr. Cormier characterized these scores as indicating that plaintiff's level of intellectual functioning is in the mildly retarded range. The ALJ also noted that, on the memory tests, the scores observed by Dr. Cormier were "higher than those the claimant obtained in previous testing on the same version of the test by Dr. Kemp. . . ."

/ / /

/ / /

/ / /

The ALJ summarized Dr. Cormier's opinions as follows:

> . . .Functionally, he opined she would require a representative payee based on her report that her father helps her pay her bills. Psychologically and behaviorally, he opined the ramifications of the claimant's mild mental retardation coupled with her apparently well-managed panic attacks and bilpolar disorder type II are likely to seriously impair her ability to perform complex and detailed tasks, but perhaps only moderately impair her ability to perform simple and repetitive ones in the right work situation. She is moderately impaired in her ability to maintain regular attendance and perform even simplistic work activities on a consistent basis. For most positions, she would probably require supportive supervision. Her ability to complete a normal workday or workweek without interruptions resulting from the ramifications of her mild mental retardation and apparently well-managed bipolar disorder and panic attacks overall appears moderately to seriously impaired even for a simplistic job. Formal memory testing suggested moderate impairment regarding her current ability to accept and remember instructions from supervisors as demonstrated by her below average to borderline memory functioning. Her reported history of anxiety around people suggests moderate impairment regarding her ability to interact with coworkers and the general public. Her reported history suggested moderate to severe impairment regarding her current ability to deal with typical stresses that she might encounter in a competitive work situation. She demonstrated moderate concentration lapses and moderate impairment regarding pace but not persistence. She neither described nor evidenced any suggestive indications of decompensation in a work or work-like setting. Cognitively, she appears moderately compromised regarding her ability to adjust to routine changes in a work situation. Dr. Cormier saw no obvious indications that she might be a psychological or behavioral safety concern in a work setting at this time. However, she reported at least moderate impairment regarding her ability to perform activities of daily living and does not do unassisted shopping, pay bills, or drive. Dr. Cormier opined, "I do not feel that she is functional outside of a moderately supportive situation at this time." (B2F).

The ALJ noted that agency reviewing psychologists Brown and Jacobs – whose opinions the ALJ gave great weight – both opined that Dr. Cormier's exam did not present evidence of changed circumstances, see CAR at Exhibits B4F, B5F, and B9F.

As to Dr. Cormier's opinions, the ALJ stated: "Dr. Cormier's opinions about the claimant's performance on mental status exam are not supported by his own observations." The ALJ also found that Dr. Cormier's opinions are inconsistent with plaintiff's treatment record, which "do not show she has significant limitations in concentration, memory, thought processes, or content." The ALJ noted that plaintiff's treating providers "thought she presented with

average intelligence and their GAF scores were consistently in the 60 to 68 range indicating she presented with mild psychiatric symptoms." The ALJ also found Dr. Cormier's opinions to be contradicted by those expressed by Miles White, Psy.D., who examined plaintiff in July 2015, see CAR at Exhibit B17F, as well as the opinions of Drs. Brown and Jacobs. Finally, the ALJ found Dr. Cormier's opinions regarding plaintiff's functioning are not supported by plaintiff's activities of daily living. In particular, the ALJ stated:

> . . .Notably, Dr. Cormier opined she was not functional outside a moderately supportive situation. Other evidence shows the claimant has good ability to perform activities of daily living despite her reported inability to socialize, remember, or concentrate. She cares for three children getting them ready for school, making their meals, and getting them to and from school. Despite her social fear, she can interact with the children's teachers during teacher conferences. She oversaw the church youth group for a time. She attends church, which requires her to be in the presence of other congregants. . . .

Plaintiff argues that the ALJ erred by rejecting the opinion of Dr. Cormier in favor of the opinions of Drs. Brown and Jacobs because those opinions are conclusory and not explained. Plaintiff also challenges the ALJ's reliance on her daily activities, arguing that her activities are consistent with Dr. Cormier's assessment.

Plaintiff's first argument is unpersuasive because, contrary to plaintiff's suggestion, Drs. Brown and Jacobs explained their opinions. Specifically, as noted by the ALJ, Dr. Brown reviewed the record in March 2011 and opined that a diagnosis of mild mental retardation was not supported by results of Wechsler and Memory Scale tests or plaintiff's presentation. Dr. Jacobs concurred.

Plaintiff's second argument is also unpersuasive. Plaintiff alleges that her daily activities show difficulty handling social stress. Specifically, she states that she reported anxiety related to the church youth group. This limitation, however, does not support Dr. Cormier's more extreme opinion that plaintiff is unable to function outside of a moderately supported work environment. In any event, the ALJ accounted for plaintiff's stress limitation in concluding that plaintiff can perform work with no interactions with the public, occasional interactions with

fellow employees, and little or no change in routine work settings.

        2.     Dr. Addonizio

Initially, the ALJ noted that on January 10, 2012, plaintiff saw Dr. Roger Cox for stress and depression. Plaintiff requested a prescription for Wellbutrin, reporting that the medication had worked well for her in the past. Plaintiff reported to Dr. Cox that the severity of her symptoms was mild. Dr. Cox prescribed Wellbutrin and referred plaintiff to mental health, but she declined. See CAR at Exhibit B12F. As to Dr. Addonizio, the ALJ stated:

> Four months later, on April 27, 2012, the claimant saw psychiatrist, Dr. Ornella Addonizio, who administered an exam for initial mental health intake. She told Dr. Addonizio she had been diagnosed with bipolar disorder at Tehama County Mental Health Services and had been taking medications for five years but had not taken any medications for the past year. She has issues with anxiety, panic attacks, mood swings, and difficulty sleeping. She said her mood swings consisted of becoming extremely "high" as if she were superwoman taking care of the world or periods of depression. Dr. Addonizio noted she had not been compliant with medications as prescribed (B13F/4).
>
> On mental status exam, Dr. Addonizio noted her appearance was appropriate and she was oriented to person, place, time, and situation. She had unremarkable behavior and psychomotor behavior. Her speech was appropriate as was her affect. Her mood was euthymic and memory intact. Sensorium was clear consciousness. Her intellect was average, attitude cooperative, and she maintained attention. Her reasoning was good as were her impulse control, judgment, and insight. Self-perception was realistic and thought processes were logical. Thought content was unremarkable. She did not express suicidal or homicidal ideation. Dr. Addonizio diagnosed the claimant with bipolar disorder and anxiety and characterized both as chronic. She assessed her GAF at 55 indicating the claimant exhibited moderate psychiatric symptoms (citation omitted). She prescribed Abilify, Niravam for anxiety, and Ambien for her sleep difficulty (B13F; B18F/132-135).
>
>         \* \* \*
>
> On February 19, 2016, the claimant's treating psychiatrist, Dr. Ornella Addonizio, prepared a medical source statement of Ability To Do Work-Related Activities (Mental) provided her by the claimant's representative firm with changed definitions of moderate and marked limitations as noted above. . . .

///

///

Regarding changed definitions, the ALJ noted that the definitions of "moderate" and "marked" on the doctor's form are different than those on the Social Security Administration's Form HA 1152, "Medical Source Statement of Ability To Do Work-Related Activities (Mental)." Specifically, the official form defines "moderate" as "greater than slight limitation in this area but the individual is still able to function satisfactorily." The form used by the doctor defines "moderate" as a significant deficit that "could not be ignored by a supervisor, coworker, peer, or the public." Similarly, while the official form defines "marked" as a serious limitation resulting in substantial loss in the ability to effectively function, the doctor's form defines "marked" as a limitation that "seriously interferes with the ability to function independently, appropriately, effectively, and on a sustained basis." Regarding the form completed by Dr. Addonizio in February 2016, the ALJ added:

> . . .Dr. Addonizio opined the claimant had mostly moderate to marked limitations in her ability to perform work from a mental standpoint. . . . She noted the claimant has challenges of negative thought content, tends to be easily overwhelmed, feels criticized by people, struggles to follow through with medical requests due to short term memory loss, and is easily distracted (B16E/2-4). . . .

As to the weight given to Dr. Addonizio's opinion, the ALJ stated:

> Similar to the discussion regarding the opinions of the claimant's physician's assistant's opinions, despite her status as a treating source, Dr. Addonizio's opinion is similarly not consistent with the medical evidence of record and she specifically notes the claimant would improve if she were compliant with taking medications as prescribed. Accordingly, the undersigned assigns this opinion little weight as it too is inconsistent with substantial evidence of stable symptoms with medication compliance and with the claimant's ability to perform basic activities of daily living despite that she requires some help with activities requiring interaction with the public.

Plaintiff argues:

> The ALJ described the opinions of Dr. Addonizio as not consistent with the medical evidence of record. AR 327. The ALJ read the report of Dr. Addonizio as stating that Nunez would get better is she complied with her medication. That does not provide an accurate reading of the record. Dr. Addonizio stated that if Nunez could be compliant she might see some

15

improvement, but that she struggled with follow-through secondary to short-term memory loss, easy distractibility, and being overwhelmed most of the time. AR 619. The articulated reason described by the ALJ lacks the support of substantial evidence and lacks legitimacy.

Assuming for the moment that non-compliance with medication was not a valid reason to reject Dr. Addonizio's opinions, plaintiff does not discuss other reasons cited by the ALJ. Specifically, as the ALJ noted, Dr. Addonizio's opinion is not consistent with the objective evidence. On mental status exam, Dr. Addonizio noted that plaintiff's appearance was appropriate and that she was oriented to person, place, time, and situation. She had unremarkable behavior and psychomotor behavior. Her speech was appropriate as was her affect. Her mood was euthymic and memory intact. Sensorium was clear consciousness. Her intellect was average, attitude cooperative, and she maintained attention. Plaintiff's reasoning was good as were her impulse control, judgment, and insight. Self-perception was realistic and thought processes were logical. Thought content was unremarkable. In addition, as the ALJ also noted, plaintiff's activities of daily living undermine Dr. Addonizio's opinion that plaintiff has what the doctor called a "marked" mental limitation that "seriously interferes with the ability to function independently, appropriately, effectively, and on a sustained basis."

3. Dr. White

As to Dr. White, the ALJ stated:

On July 21, 2015, consultative psychologist, Miles White, Psy.D., performed a comprehensive psychological evaluation of the claimant. Dr. White reviewed a psychological report from Greenville Rancheria dated April 27, 2012 (*see* Exhibit B18F/132-134, Ms. Townsend's initial appointment with the claimant) and the claimant's disability Report (form SSA-3368). Dr. White noted she presented with obvious difficulties with cognitive performance. She had some inconsistencies in her report, she was mildly disorganized, and not a capable historian at all times. She told Dr. White she had a learning disorder when in school and was in special education. She said she has been diagnosed with bipolar and anxiety disorder. She said she takes Adderall, Prozac, and Xanax and reported moderate symptom relief with occasional or no side effects. She reported being sexually molested by three cousins from age 10 to 16. Dr. White noted that she was appropriately upset while recalling these events but he did not see evidence of unresolved PTSD. She denied a history of drug

and alcohol use.

> Regarding her activities of daily living, she lives with her parents, cousin, and aunt in a house. She can care for her own personal hygiene needs. She depends on her parents or aunt for transportation. She said she cannot go out alone and gets easily confused, frustrated, and anxious in unfamiliar social situations. She self-isolated due to lack of self-confidence and anxiety resulting from her cognitive deficits. She said she has problems maintaining household chores and tasks and receives help from her parents with household tasks. She relies on her family when confronting any major decisionmaking tasks. Dr. White opined her cognitive and social impairments were markedly evidence in her presentation during the evaluation. "She demonstrated she is not capable of managing funds. She demonstrated significant cognitive deficiencies, which markedly interfered with her ability to concentrate and focus." Dr. White opined that on a daily basis the claimant maintained and demonstrated that she is constantly challenged by her intellectual limitations which interfere with her ability to effectively function socially and interpersonally at times. The claimant's overall psychological functioning was consistently reported and presented within the severe range of impairment. However, he gave no specific examples to support his reported observations or her "demonstrations" or presentations of psychological functioning.

The ALJ then discussed the various tests administered by Dr. White during his evaluation. Specifically, Dr. White measured plaintiff's full scale IQ as 55, her performance IQ score as 67, and her verbal IQ score as 56.[2] The ALJ continued as follows:

> Dr. White diagnosed the claimant with bipolar disorder NOS and mild mental retardation. He assessed her GAF as 45 indicating he thought the claimant presented with "A severe level of intellectual memory impairment" (citation omitted) (B17F). Functionally, he opined the claimant's psychological/cognitive functional capabilities reflect a severe level of impairment (B17F/11). Dr. White prepared a medical source statement of Ability To Do Work-Related Activities (Mental), form AH 1152, and opined she had marked limitation in her ability to understand, remember, and carry out complex instructions and to make judgments on complex work-related decisions. She had mild limitation in her ability to understand, remember, and carry out simple instructions and to make judgments on simple work-related decisions. She was markedly limited in

---

[2] The ALJ noted in particular that plaintiff's IQ scores fell over time despite the absence of any evidence of an intervening medical condition, such as a head trauma. Dr. Kemp recorded plaintiff's full scale IQ as 72 in 2008; Dr. Cormier reported plaintiff's full scale IQ as 63 in 2011; and Dr. White reported plaintiff's full scale IQ as 55 in 2015. The ALJ also noted that plaintiff's memory testing scores improved from 2008 as compared to 2011 when Dr. Cormier conducted testing, but then fell below 2008 levels by the time of Dr. White's testing in 2015.

17

| | |
|---|---|
| 1 | her ability to respond appropriately to usual work situations and to changes in a routine work setting. She had moderate limitations in her ability to interact appropriately with public, supervisors, and co-workers. Dr. White cited the bases for his opinion were the IQ test results (B17F/12-13). |
| 2 | |
| 3 | |
| 4 | Regarding the weight assigned to Dr. White's opinions, the ALJ stated: |
| 5 | As noted above, consultative psychologist, Dr. White, examined the claimant in July 2015 and again performed psychometric tests. This time the claimant's scores worsened including her performance on the Wechsler Memory Scale IV. However, in reviewing her treating record, the evidence indicates she had stopped taking medication during this exam as well. Physician's assistant, Mr. Kinney's July 2015 follow up treating record shows he reported she self-discontinued Prozac "since it made her feel worse." Notably, Mr. Kinney noted on mental status exam her mood was euthymic, speech was appropriate, memory was intact, she was cooperative, and her reasoning, impulse control, judgment, and insight remained fair (B18F/2-5). Dr. White made similarly conclusionary statements about the claimant's presentations as did Dr. Cormier stating she demonstrated significant cognitive deficiencies which markedly interfered with her ability to concentrate and focus. He also stated her cognitive and social impairments were markedly evidenced in her presentation during this evaluation (B17F/5), and like Dr. Cormier, he does not provide specific examples other than to report her performance on psychometric tests. Moreover, he opined she had only mild limitations as defined in SSA Form HA 1152, in her ability to understand, remember, and carry out simple instructions and to make judgments on simple work-related decisions (B17F/12) which is inconsistent with his diagnosis of mild mental retardation. Instead, he opined she has marked limitation in her ability to respond to usual workplace situations and changes in a routine work setting due to her IQ results (B17F/13). While the evidence supports she has some cognitive limits based on her psychometric test results, history of special education, and limited education, she has worked with limitations in social interactions and she can performed basic activities of daily living which do not support she has marked [limitation in] ability to adapt to routine changes. Accordingly, as Dr. White's opinion is not consistent with substantial evidence, the undersigned assigns it little weight. |

Plaintiff argues that the ALJ erroneously discounted Dr. White's opinions based on decreased IQ scores absent intervening trauma. According to plaintiff, the decreasing results can be attributed to differing versions of the tests administered over time.

///

///

///

This argument is not supported by the record. As the ALJ noted, while Dr. Kemp administered the WAIS III in 2008, Drs. Cormier and White both administered the WAIS IV. Based on the WAIS IV results, Dr. Cormier opined in 2011 that plaintiff's full scale IQ is 63. Based on results of the same test, Dr. White opined in 2015 that plaintiff's full scale IQ is 55. As the ALJ observed, there is no evidence of any trauma occurring between 2011 and 2015 to account for a decrease in IQ scores, thus supporting the ALJ assessment that Dr. White's opinion is entitled to less weight.

## IV. CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 16) is denied;
2. Defendant's cross-motion for summary judgment (Doc. 19) is granted; and
3. The Clerk of the Court is directed to enter judgment and close this file.

DATED: May 2, 2018

**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE

19